**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

In re: ORGANIZED CONFUSION, LLP,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                           Lead Case No: 8:14-cv-3226-T-24

SYNOVUS BANK,

    Defendant.

---

In re: PROFESSIONAL STAFFING—
A.B.T.S., INC.,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                           Member Case No: 8:14-cv-3227-T-24

SYNOVUS BANK,

    Defendant.

---

In re: WESTWARD HO, LLC,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                                                          Member Case No: 8:14-cv-3228-T-24

SYNOVUS BANK,

    Defendant.

---

In re: WESTWARD HO II, LLC,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                                                          Member Case No: 8:14-cv-3229-T-24

SYNOVUS BANK,

    Defendant.

---

In re: YJNK II, INC.,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                                                          Member Case No: 8:14-cv-3230-T-24

SYNOVUS BANK,

    Defendant.

---

In re: YJNK III, INC.,

    Debtor.

---

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                                                       Member Case No: 8:14-cv-3231-T-24

MICHAEL D. TRAINA,

    Defendant.

_____

In re: ABLE BODY GULF COAST, INC.,

    Debtor.

_____

CHRISTINE L. HERENDEEN,

    Plaintiff,

v.                                                                                      Member Case No: 8:14-cv-3232-T-24

SYNOVUS BANK,

    Defendant.

_____

## ORDER

This cause comes before the Court on Plaintiff's motions to withdraw the reference and Defendant's responses in opposition.[1] The Court, having reviewed the motions, responses, and being otherwise advised, concludes that the motions to withdraw the reference should be denied.

## I. BACKGROUND

These are seven of nine related adversary proceedings currently pending before Judge Caryl E. Delano in the United States Bankruptcy Court for the Middle District of Florida.[2] The

---

[1] *See In re: Organized Confusion, LLP*, Case No. 8:14-cv-03226-SCB (Dkts. 1 and 2); *In re Professional Staffing—A.B.T.S., Inc. v. Synovus Bank*, Case No. 8:14-cv-03227-SCB (Dkts. 1 and 2); *In re Westward Ho, LLC,* Case No. 8:14-cv-3228-SCB (Dkts. 1 and 2); *In re Westward Ho, II*, Case No. 8:14-cv-03229-SCB (Dkts. 1 and 2); *In re YJNK II, Inc.*, 8:14-cv-03230-SCB (Dkts. 1 and 2); *In re YJNK III, Inc.*, Case No. 8:14-cv-03231-SCB (Dkts. 1 and 2); and *In re Able Body Gulf Coast, Inc.*, Case No. 8:14-cv-03232-SCB(Dkts. 1 and 2).

[2] *In re Organized Confusion, LLP*, Case No. 8:14-ap-00972-CED; *In re Professional Staffing—A.B.T.S., Inc. v.*

3

adversary proceedings were commenced by Christine L. Herendeen, the Chapter 7 Trustee of several bankrupt entities, against Synovus Bank.

The related adversary proceedings all arise from allegedly fraudulent transfers made by bankrupt debtor, Frank Mongelluzzi ("Mongelluzzi"), and several bankrupt entities he owned with his wife, Angela Mongelluzzi (together with Mongelluzzi, the "Mongelluzzis"). The Mongelluzzis owned and operated several temporary labor staffing businesses from approximately 1986 to 2010.[3] The Mongelluzzis also had other personal and business interests, including construction companies, restaurants, pawn shops, real estate holdings, aircraft, and yachts (together with the Staffing Businesses, the "Mongelluzzi Entities").[4] The Mongelluzzi Entities held approximately 77 bank accounts with Defendant Synovus Bank ("Synovus") from 2007 to 2011. The Staffing Businesses also had a $35 million asset-based revolving line of credit with Synovus (the "Credit Line"), from 2008 to 2010 that was personally guaranteed by the Mongelluzzis, and secured by the assets of the Staffing Businesses. The terms of the Credit Line required the Staffing Businesses to use loan proceeds only for their working capital needs.

On May 24, 2013, the Staffing Businesses, Organized Confusion, LLP and YJNK II, Inc. (collectively, the "Bankrupt Entities") filed voluntary petitions for relief under Chapter 7 of the United States Bankruptcy Code. Plaintiff Christine Herendeen was appointed as the Chapter 7 Trustee of the Bankrupt Entities' estates. On October 31, 2014, Plaintiff filed complaints on behalf

---

*Synovus Bank*, Case No. 8:14-ap-00973-CED; *Westward Ho, LLC*, Case No. 8:14-ap-00974-CED; *In re Westward Ho II, LLC*, Case No. 8:14-ap-00975-CED; *In re In re YJNK II, Inc.*, Case No. 8:14-ap-00976-CED; *In re YJNK III, Inc.*, Case No. 8:14-ap-00977-CED; *In re: Able Body Gulf Coast, Inc.,* Case No. 8:14-ap-00978-CED; *Welch v. Synovus Bank et al.*, Case No. 8:14-ap-00645-CED; and *Welch v. Regions Bank*, Case No. 8:14-ap-00653-CED (collectively the "related adversary proceedings").

[3] These temporary labor staffing businesses included Professional Staffing—A.B.T.S., Inc., Able Body Gulf Coast, Inc., Westward Ho, LLC, Westward Ho II, LLC, and YJNK III, Inc. (collectively, the "Staffing Businesses").

[4] The Mongelluzzi Entities included Organized Confusion, LLP and YJNK II, Inc.

of the Bankrupt Entities against Synovus in the bankruptcy court. The complaints all seek to avoid allegedly fraudulent transfers made by the Bankrupt Entities to or for the benefit of Synovus under 11 U.S.C. § 544(b) of the United States Bankruptcy Code, and the Florida Uniform Fraudulent Transfer Act ("FUFTA"). Florida Statutes §§ 726.106(1); 726.108. Plaintiff also asserts claims against Synovus for unjust enrichment and aiding and abetting breach of fiduciary duty.

The complaints allege Mongelluzzi and others engaged in an elaborate check kiting scheme that hindered, delayed, and defrauded the Bankrupt Entities' creditors in the period of 2007 through 2010. Plaintiff asserts Synovus benefitted from the alleged scheme by assessing considerable overdraft fees, charges, interest, and by receiving substantial purchase price consideration when the Staffing Businesses were eventually sold in 2010.

The alleged scheme involved Mongelluzzi and others continuously issuing checks drawn on accounts which lacked sufficient funds to cover them, which allowed the Bankrupt Entities access to interest-free loans created by the false account balances during the float period. Mongelluzzi and others would subsequently write checks drawn on the Bankrupt Entities' and other of the Mongelluzzi Entities' accounts and deposit said checks in the Mongelluzzi Entities' accounts before the float period expired. Plaintiff also alleges Mongelluzzi and the Staffing Businesses utilized loan proceeds from the Credit Line to cover checks issued in connection with the scheme.

The complaints allege that as a result of Synovus' monitoring of the Mongelluzzi Entities' accounts and its financial oversight in connection with the administration of the Credit Line, Synovus acquired intimate and thorough knowledge of the Bankrupt Entities' insolvency and the check kiting scheme. Plaintiff alleges that after Synovus' purported discovery of the Mongelluzzi Entities' scheme, Synovus continued its banking relationship with the Mongelluzzi Entities and

continued to collect substantial fees, charges, interest, and other forms of revenue to the detriment of the Bankrupt Entities' creditors. Plaintiff also alleges Synovus eventually forced the sale of the Staffing Businesses by choking off their access to loan proceeds from the Credit Line.

On September 2, 2010, the Staffing Businesses were sold to Michael D. Traina and MDT Personnel, LLC ("MDT") pursuant to an asset purchase agreement (the "Asset Purchase Agreement"). The Asset Purchase Agreement provided for a purchase price equivalent to the then current outstanding senior indebtedness of the Staffing Businesses, the vast majority of which was owed to Synovus. In connection with the closing of the Asset Purchase Agreement, MDT satisfied approximately $39 million of the Staffing Businesses' outstanding senior liabilities to Synovus, and the Credit Line was restructured, making MDT an obligor to Synovus (the "Restructured Credit Line"). The Restructured Credit Line was secured by the assets MDT acquired from the Staffing Businesses as a result of the Asset Purchase Agreement. Significantly, Plaintiff alleges Synovus' active role in forcing the sale of the Staffing Businesses resulted in Synovus having essentially the same loan and the same collateral both before and after the Mongelluzzis sold the Staffing Businesses' assets to Traina and MDT, with the exception that the new obligors were MDT and Traina. On the basis of the foregoing, Plaintiff asserts the transfers Synovus received from the Asset Purchase Agreement, along with the substantial fees, charges, interest, and other forms of revenue it received in continuing its banking relationship with the Mongelluzzi entities are partially or entirely subject to avoidance and recovery by Plaintiff for the benefit of the Bankrupt Entities' legitimate creditors.

Plaintiff now moves for the entry of an order withdrawing the reference pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, and Local Rule 5011-1(b)(2) of the United States Bankruptcy Court for the Middle District of Florida.

## II.     JURISDICTIONAL ANALYSIS

### Bankruptcy Court Jurisdiction

The United States Code grants bankruptcy jurisdiction to Article III district courts. Specifically, 28 U.S.C. § 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Congress provided in 28 U.S.C. § 157(a) that each district court may refer all cases "arising under," "arising in," or "related to" Title 11 proceedings to the bankruptcy judges for the district. This Court has a standing order referring all bankruptcy matters to the bankruptcy courts. A finding that a matter is "related to" a bankruptcy case confers subject matter jurisdiction to the bankruptcy court and empowers it to hear the non-core matter. *In re Happy Hocker Pawn Shop, Inc.*, 212 Fed. App'x 811, 817 (11th Cir. 2006). However, under § 157(c), the bankruptcy court's power to determine a non-core matter is limited, as compared to its power to hear and determine core matters under § 157(b)(l). Specifically, the bankruptcy court has the power to determine matters properly before it under Title 11, but with respect to "related to" or non-core matters, an Article III court must render final judgment unless the parties consent to allow the bankruptcy court to handle the matter. 28 U.S.C. § 157(b) and (c).

## III.    STANDARD GOVERNING PERMISSIVE WITHDRAWAL OF REFERENCE

The standard for permissive withdrawal is stated in 28 U.S.C. § 157(d): "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under [§ 157], on its own motion or on timely motion of any party, for cause shown." Congress has not given a definition or explanation of the "cause" required for permissive withdrawal, but the Eleventh Circuit has stated that cause "is not an empty requirement." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991). In determining whether the movant has established sufficient cause to withdraw

the reference, "a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *In re Advanced Telecomm. Network, Inc.,* 2014 WL 2528844, at *1 (M.D. Fla. June 4, 2014) (*citing In re Simmons*, 200 F.3d 738, 742 (11th Cir. 2000) (citations omitted)). Additional factors to consider include: (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) a jury demand; and (4) prevention of delay. *Control Ctr., L.L.C. v. Lauer,* 288 B.R. 269, 274 (M.D. Fla. 2002) (citations omitted).

The Eleventh Circuit has noted that "the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts." *Parklane*, 927 F.2d at 538. The determination of whether to grant a motion for permissive withdrawal is within the court's discretion. *See In re Fundamental Long Term Care, Inc.,* 2014 WL 4452711, at *1 (M.D. Fla. Sept. 9, 2014) (citing *In re TPI lnt'l Airways*, 222 B.R. 663, 668 (S.D.Ga.1998) (citations omitted)).

IV.     **MOTION TO WITHDRAW THE REFERENCE**

Plaintiff argues that the reference should be withdrawn for the following reasons: (1) the complaints' claims are non-core because they arose before the bankruptcy; and (2) withdrawing the reference would promote the efficient use of economic and judicial resources. Additionally, Plaintiff has demanded a jury trial, and as such, Plaintiff contends this is another factor in support of withdrawal. As discussed below, the Court determines it is appropriate for the reference to remain with the bankruptcy court, and for the bankruptcy court to address all matters at this time.

8

**Core or Non-Core Status of the Proceedings**

The first factor the Court considers is whether the claims are core or non-core. The Court has stated that the determination of whether a matter is core or non-core "'should first be made by the bankruptcy court.'" *In re Fundamental Long Term Care, Inc.*, 2014 WL 2882522, at *2 (M.D. Fla. June 25, 2014) (citing *In re Stone*, 2010 WL 5069698, at *1 (M.D. Fla. Dec. 7, 2010) (citations omitted)); *see also* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."); *Welch v. Regions Bank*, Case No. 8:14-cv-00188-T-EAK-TGW (Dkt. 31) ("the bankruptcy judge is responsible for determining whether a proceeding is core or non-core.") (citation omitted). Neither party has argued that the bankruptcy court has made a determination regarding whether the adversary proceedings at issue are core or non-core proceedings, and this Court is not inclined to make that determination. As such, the Court will not consider this factor in its analysis of the propriety of withdrawal. *See id.* (citing *TPI Int'l*, 222 B.R. at 668 n. 3) (stating that the court would not consider this factor due to the fact that the bankruptcy court has not determined whether the proceedings were core or non-core).

**Efficient Use of Economic and Judicial Resources**

Next, the Court considers how to most efficiently use judicial resources. A district court can allow the bankruptcy court to retain jurisdiction to address all pretrial matters, from discovery through dispositive motions on non-core claims. *See In re Gunnallen Financial, Inc.,* 2011 WL 398054, at *4 (citing *In re Stone,* 2010 WL 5069698, at *1 (M.D.Fla.2010) (finding that the case did not need to be immediately withdrawn from the bankruptcy court and that the bankruptcy court could handle all pretrial matters)). However, Plaintiff asserts adjudication of the matter by the

9

district court in the first instance would be more efficient, because the bankruptcy court would have to make proposed findings of fact and conclusions of law on non-core claims, which would then be submitted to the district court for *de novo* review. Plaintiff also asserts that the potential submission of findings of fact and conclusions of law to the district court will delay the conclusion of this adversary proceeding.

The bankruptcy court's familiarity with the similar facts in the related adversary proceedings place the bankruptcy court at an informational advantage. Two of the related adversary proceedings brought by a different plaintiff have been pending before the bankruptcy court since July 2014 and the bankruptcy court has since held numerous hearings therein. The bankruptcy court has also held hearings and ruled on motions to dismiss in the adversary proceedings underlying the instant motions to withdraw the reference. Therefore, it is the Court's conclusion that allowing these adversary proceedings to continue in the bankruptcy court for all pretrial matters promotes the efficient use of judicial resources and will not result in delay.

### Jury Demand

Plaintiff has demanded a jury trial on all claims asserted in the adversary proceedings. Plaintiff states she does not intend to consent to a jury trial before the bankruptcy court. In response, Defendant argues that Plaintiff is not entitled to a jury trial because (1) Plaintiff is bound by jury trial waivers contained in two security agreements[5] and a modification agreement[6] between Synovus and six Bankrupt Entities; (2) Plaintiff's unjust enrichment claim is equitable in

---

[5] Professional Staffing—A.B.T.S., Inc., YJNK II, Inc., YJNK III, Inc., Able Body Gulf Coast, Inc., and Westward Ho II, LLC were parties to one security agreement. *See* Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. U). Westward Ho, LLC was party to a second security agreement. *See* Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. T).

[6] Professional Staffing—A.B.T.S., Inc., YJNK II, Inc., YJNK III, Inc., Able Body Gulf Coast, Inc., Westward Ho, LLC and Westward Ho II, LLC were parties to the modification agreement. *See* Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. S).

nature and does not trigger a jury trial right; and (3) Plaintiff, as bankruptcy trustee may not be entitled to a jury trial in an avoidance action.

The Court will consider the issue of jury trial waivers first. The case of *In re Pearlman*, 493 B.R. 878, 885 (M.D. Fla. 2013) is instructive. In *Pearlman*, a chapter 11 trustee requested a jury trial in an adversary proceeding to avoid alleged fraudulent transfers by the debtors and to bring a fraudulent conveyance claim on behalf of prepetition creditors pursuant to § 544 of the Bankruptcy Code. The bankruptcy court determined that the trustee was not entitled to a jury trial on the fraudulent transfer or fraudulent conveyance claims because the debtors had waived the right to a jury trial in a related loan agreement. The court explained:

> A trustee represents the interests of a *debtor*…which includes bringing any action that the *debtor* could have brought had it not filed for bankruptcy. The Trustee is correct that pre-bankruptcy, only a creditor had the right to assert a state-law fraudulent conveyance claim. However, once the Debtors' petitions were filed, any fraudulent conveyance claim became the *exclusive* right of the Trustee to pursue. The Trustee, who has the same rights and defenses as the Debtors, is bound by the Debtors' waiver and is precluded from asserting a jury trial demand in this case.

*Id.* (emphasis in original).

The Eleventh Circuit has held "[a] party may validly waive its Seventh Amendment right to a jury trial so long as waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise Sys. Inc.,* 164 Fed. App'x 820, 823 (11th Cir.2006). Generally, "[i]n making this assessment, courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Id* at 824. The court considers these factors and then determines "whether, in light of all the circumstances, the [c]ourt finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Allyn v. W. United Life Assur. Co.,* 347 F.Supp.2d 1246, 1252 (M.D. Fla. 2004).

It is apparent that the six of the Bankrupt Entities waived their right to a jury trial in the

11

security agreement and the modification agreement. The security agreement, which was signed by Mongelluzzi, as President of Professional Staffing—A.B.T.S., Inc., YJNK II, Inc., YJNK III, Inc., Able Body Gulf Coast, Inc., and as manager of Westward Ho II, LLC, includes a paragraph entitled "WAIVER OF JURY TRIAL". The paragraph regarding the waiver of jury trial appears in uppercase and bold-face font, and provides in part that the bankrupt entities and Synovus:

> (a) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY, AND (b) WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH CREDITOR AND DEBTOR MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THIS AGREEMENT, ANY OF THE LOAN DOCUMENTS AND/OR ANY TRANSACTIONS, OCCURENCES, COMMUNICATIONS, OR UNDERSTANDING (OR THE LACK OF ANY OF THE FOREGOING) RELATING IN ANY WAY TO THE DEBTOR-CREDITOR RELATIONSHIP BETWEEN THE PARTIES. IT IS UNDERSTOOD AND AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS SECURITY AGREEMENT. THIS WAIVER OF JURY TRIAL IS SEPARATELY GIVEN, KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO…

(Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. U)).[7] The modification agreement, which was also signed by Mongelluzzi on behalf of the same six Bankrupt Entities, also contains a jury trial waiver, which again in uppercase and bold-face font provides:

> LENDER, BORROWER, AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARITY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE RENEWAL NOTE, LOAN AGREEMENT AND SECURITY AGREEMENT REFERRED TO HEREIN, AND ANY AGREEMENT EXECUTED THEREWITH OR REFERRED TO OR DESCRIBED HEREIN OR CONTEMPLATED TO BE EXECUTED IN CONJUNTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITEN) OR ACTIONS OF EITHER PARTY, OR ANY OF THE THEM. THIS PROVISION

---

[7] The jury trial waiver in the security agreement between Westward Ho, LLC and Synovus, which was signed by Mongelluzzi as manager of Westward Ho, LLC, contains substantially similar language. *See* Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. T).

12

IS A MATERIAL INDUCEMENT FOR THE LENDER ENTERING INTO THIS AGREEMENT.

(Bkrtcy. Case No. 8:14-ap-00973-CED (Dkt. 7, Ex. S)). The waiver provisions are conspicuous and there is no suggestion that the parties had unequal bargaining power or that the terms of the agreements were not negotiable. In light of these circumstances, the Court does not find the waivers to be unconscionable, contrary to public policy, or simply unfair. Therefore, it is the Court's conclusion that Plaintiff is bound by the jury trial waivers found in the security agreements and the modification agreement, and thus, is precluded from asserting a jury trial demand with regard to the bankrupt entities who were parties thereto. *See In re Pearlman*, 493 B.R. at 885. Accordingly, Plaintiff's request for a jury trial is not a sufficient reason for the Court to withdraw the reference for said bankrupt entities.

With regard to bankrupt entity Organized Confusion, LLP, the only bankrupt entity that did not agree to waive a jury trial in any relevant agreement, the Court must consider Defendant's arguments that Plaintiff is not entitled to a jury trial on her unjust enrichment claim and that Plaintiff, as bankruptcy trustee, may not be entitled to a jury trial in an avoidance action.

As to Defendant's argument that Plaintiff is not entitled to a jury trial on her unjust enrichment claim, Defendant is correct that Plaintiff's claim for unjust enrichment is an equitable one that is heard by the Court and not a jury. *See Goldberg v. Chong*, No. 07-20931-CIV-HUCK, 2007 WL 2028792, at *10, n. 9 (S.D. Fla. July 11, 2007) (citation omitted). However, it is not clear whether Plaintiff, as bankruptcy trustee, is entitled a jury trial in an avoidance action.

The Florida bankruptcy courts differ on whether a bankruptcy trustee may elect a jury trial under these circumstances. *Cf. In re Pearlman,* 493 B.R. at 878 (holding a bankruptcy trustee is never entitled to a jury trial in avoidance actions); *Mukamal v. BMO Harris Bank, N.A.,* 501 B.R. 792 (S.D. Fla.2013) (holding a bankruptcy trustee had a right to jury trial in an avoidance action

where a defendant had not filed a proof of claim). Notwithstanding that Florida law is uncertain on this issue, it remains appropriate for the bankruptcy court to address all pretrial matters. Should it become necessary, the Court will revisit Plaintiff's entitlement to a jury trial in the case of *In re Organized Confusion, LLP*.[8]

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motions to Withdraw the Reference are **DENIED**. The Clerk is directed to **CLOSE** case numbers 8:14-cv-03226-SCB; 8:14-cv-03227-SCB; 8:14-cv-03228-SCB; 8:14-cv-03229-SCB; 8:14-cv-03230-SCB; 8:14-cv-03231-SCB; and 8:14-cv-03232-SCB.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of February, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies To:
The Honorable Caryl E. Delano
Counsel of Record

---

[8] Because the bankruptcy court cannot issue a final judgment as to non-core matters, should the bankruptcy court determine that the adversary proceedings contain non-core claims and any of the parties refuse to consent to the bankruptcy court's conducting trial in the matter, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to this Court, and any final order or judgment shall be entered by this Court after considering the bankruptcy judge's proposed findings and conclusions pursuant to 28 U.S.C. § 157(c).